UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

Case No. 15-20656
Hon. Mark A. Goldsmith

LAMAROL TAVRON ABRAM,

    Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT LAMAROL TRAVRON ABRAM'S MOTION FOR
COMPASSIONATE RELEASE (Dkt. 44) AND MOTION FOR REDUCED SENTENCE
OR ALTERNATE RELIEF (Dkt. 42)**

This matter is before the Court on Defendant Lamarol Travron Abram's pro se motion for compassionate release (Dkt. 44) and motion to reduce the term of his imprisonment (Dkt. 42) under 18 U.S.C. § 3582(c)(1)(A)(i).[1] Abram was sentenced on February 7, 2018, to 108 months' imprisonment after pleading guilty to one count conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C). See Am. Judgment (Dkt. 41). In the present motions, due to the dangers posed by COVID-19, Abram seeks to reduce his sentence to time served or, in the alternative, he asks the Court to recommend to the Bureau of Prisons ("BOP") that he be transferred to the Pennsylvania Department of Corrections ("PDOC"). The Government

---

[1] In Abram's pro se motion, he asks the Court to appoint counsel to assist him with his motion for compassionate release. Because Abram's attorney has already filed a motion on his behalf, Abram's request for an attorney is denied as moot.

has responded to the motions (Dkt. 46). Abram has not filed a reply brief in support of his motions. For the reasons that follow, the Court denies Abram's motions.

## I. BACKGROUND

Abram is currently serving his sentence at the Federal Correctional Institution ("FCI") in Elkton, Ohio. As discussed in a recent opinion from the Northern District of Ohio, FCI Elkton has had difficulty containing the spread of COVID-19. Wilson v. Williams, No. 4:20-cv-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020). In Wilson, based on the threat posed by COVID-19 at FCI Elkton, the court identified a subclass of inmates who are at a higher risk of harm from the virus, and ordered the respondents to evaluate the subclass members for, among other things, compassionate release and transfer out of FCI Elkton. Id. at *6, 10-11. It does not appear that Abram has been identified as a member of the Wilson subclass.

Abram is forty-two years old and says that he has hypertension, an enlarged heart, chronic asthma, and that he had a cataract removed and an artificial eye lens implanted. Mot. for Compassionate Release at 14; Mot. for Reduction of Sentence ¶ 4. Abram's hypertension appears to have resolved in 2018, see Abram 2019 Medical Records, Ex. 1 to Resp., at PageID.290, 296 (Dkt. 47-1), and there does not appear to be any medical basis for his claim that he has an enlarged heart, see Abram's 2020 Medical Records, Ex. 2 to Resp., at PageID.346-348 (Dkt. 47-2) (Radiologist noting Abram's heart is normal size). Abram's asthma is well-documented, but his medical records also note that the condition is "well controlled," and that he has been prescribed an Albuterol Inhaler to be use as needed. Abram's 2019 Medical Records at PageID.272-274. With respect to Abram's cataract removal and eye lens replacement, these procedures were completed in 2015. Id. at PageID.289-290.

The BOP has been given increased authority to place federal prisoners in home confinement based on threat posed by COVID-19, and it is conducting a case-by-case analysis of its inmates to evaluate the feasibility of home confinement. Resp. at 7-11. Although the BOP has a process in place to evaluate inmates who qualify for home confinement, Abram seeks relief under the First Step Act.

## II. LEGAL STANDARD

"The First Step Act of 2019, Pub. L. 115-391, 132 Stat. 5194, modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582," such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Sapp, No. 14-cr-20520, 2020 WL 515935, at *1 (E.D. Mich. Jan. 31, 2020). Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may reduce a sentence if, after considering the sentencing factors set forth in § 3553(a), the court finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

In the commentary to U.S.S.G. § 1B1.13, the Sentencing Commission has enumerated several extraordinary and compelling reasons justifying a reduction of sentence, including the "Medical Condition of the Defendant," "Age of the Defendant," and "Family Circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C). Some examples of compelling reasons are medical conditions "with an end of life trajectory," a defendant's serious physical deterioration related to the aging process, and death or incapacitation of a caregiver of a defendant's minor child or children. Id. The Guidelines also contemplate "Other Reasons" where the defendant has "extraordinary and compelling reasons other than, or in combination with" the other enumerated reasons. U.S.S.G. 1B1.13 cmt. n.1(D).

### III. ANALYSIS

Although Abram has filed two motions, one pro se and one through counsel, the motions rely on the same underlying facts and seek similar relief. Abram argues that due to his age and medical conditions, he is particularly vulnerable to the COVID-19 pandemic, and, therefore, he seeks to have his sentence reduced to time served or, alternatively, transferred to the PDOC to serve his time for a parole violation. Mot. for Compassionate Release at 18; Mot. to Reduce Sentence ¶ 6. The Government argues that neither avenue for relief is warranted because Abram's medical conditions and age do not warrant such relief. Resp. at 16-17. The Government has the better part of the argument.

Abram may have an increased risk of suffering the more severe symptoms of COVID-19, but neither his age nor most of his medical conditions are necessarily contributing factors. According to the Center for Disease Control ("CDC"), individuals aged sixty-five and older are at a higher risk for severe illness and death from COVID-19 due to weaker immune systems and underlying chronic diseases.[2] Abram, at age forty-two, does not fall into this category of individuals. Abram also argues that his hypertension, enlarged heart, and cataract removal and lens replacement make him more susceptible to COVID-19. However, as noted above, Abram's hypertension appears to have been resolved, and there is no evidence than Abram's has an enlarged heart. It is also not clear why cataract removal and an artificial lens surgery from more than four years ago would make Abram more susceptible to COVID-19. Individuals with moderate-to-severe asthma, on the other hand, are at a higher risk for complications from COVID-19.[3] The

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#people-aged-65%20years-and-older (last visited on May 27, 2020).

[3] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#asthma (last visited on May 27, 2020).

increased risk is because COVID-19 can affect a person's respiratory tract, cause an asthma attack, and possibly lead to pneumonia and serious illness. The CDC recommends avoiding asthma triggers and continuing any prescribed medications. Abram may have an elevated risk for severe COVID-19 symptoms, but he has not shown that his asthma is moderate to severe, the grades of the condition identified by the CDC elevating risk for severe symptoms. Additionally, Abram has been provided with medication to control his asthma, and his medical records say that his asthma is "well controlled."

The Government argues that this Court has already denied compassionate release to another inmate at FCI Elkton with medical conditions no worse than Abram's conditions. Resp. at 17-18 (citing United States v. Peaks, No. 16-20460, 2020 WL 2214231, at *1 (E.D. Mich. May 7, 2020)). In that case, the Court found that the defendant's generalized risks of contracting COVID-19 and potentially developing the more severe symptoms due to his obesity and high blood pressure, in light of his relatively young age and access to medication, were not akin to the type of "extraordinary and compelling reasons" justifying compassionate release. Peaks, 2020 WL 2214231, at *2.

Abram argues that the relief he is seeking is "substantially different" from the relief sought in Peaks, because he has a detainer for a parole violation from the PDOC, which could lead to an additional thirteen-year custodial sentence. Mot. to Reduce Sentence ¶ 6. He argues that either reducing his sentence to time served or issuing a recommendation for a transfer to a PDOC facility, would dramatically increase his chances of surviving the pandemic. Id. ¶¶ 7-14. Abram's argument is not persuasive.

Abram, like Peaks, may have an elevated risk of developing the more severe symptoms of COVID-19, but that generalized risk of contracting COVID-19 and potentially developing the

more severe symptoms is not akin to the type of "extraordinary and compelling reasons" justifying compassionate release identified by the Sentencing Commission. Abram has not contracted the virus, and his asthma, in light of his relatively young age and access to medication, does not fall in the category of illnesses with an end of life trajectory, or other reasons, under the guidelines. A reduction in sentence would not be consistent with the policy statements issued by the Sentencing Commission.[4] Therefore, Abram is not entitled to compassionate release.

Abram also asks this Court to recommend to the BOP that he be transferred to PDOC. Mot. for Reduced Sentence at 5-6 (Dkt. 42). As Abram recognizes, a court has no authority to select the place where a sentence will be served. United States v. Jalili, 925 F.2d 889, 894 (6th Cir. 1991). A court may, however, make a non-binding recommendation to the BOP with respect to place of imprisonment. United States v. Townsend, 631 F. App'x 373, 378 (6th Cir. 2015). Abram cites another court in this district that made such a recommendation. See United States v. Collins, Case No. 17-20360 (Dkt. 104), Op. & Order granting in part motion for reduced sentence (E.D. Mich. May 5, 2020) (Lawson, J.).

In Collins, based on very similar facts, the court recommended the defendant for home confinement. Id. at 12. Here, however, Abram is asking the Court to recommend to the BOP that it release him to a state prison system, with no indication of how long he may be incarcerated for his parole violation. He notes that PDOC has the authority to hold him for up to thirteen years. But "up to" thirteen years also includes the possibility that he serves a single day. In light of the

---

[4] Even in the context of pretrial release—which is not confined by the stringencies of the "extraordinary and compelling reasons" standard applicable here—courts have not granted relief from custody without a strong showing that a prisoner has a significant risk of suffering harm from COVID-19. See, e.g., United States v. Wise, No. 18-20799, 2020 WL 1873364, at *3 (E.D. Mich. Apr. 15, 2020); United States v. Brown, No. 13-20337, 2020 WL 2092651, at *5-*7 (E.D. Mich. May 1, 2020).

considerable amount of time left on his federal sentence, and the uncertainty to the amount of time Abram would serve in Pennsylvania, the Court is unwilling to make any recommendations to the BOP with respect to where Abram should serve the remainder of his sentence.

### IV.   CONCLUSION

For the reasons stated above, Abram's motion for compassionate release (Dkt. 44) and motion to reduce the term of his imprisonment (Dkt. 42) are denied.

SO ORDERED.

Dated: June 11, 2020  　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan  　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 11, 2020.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　Case Manager